UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Cause No. 2:18-CR-145-PPS-JEM |
| | ) |
| CARLOS RODRIGUEZ, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Carlos Rodriguez is a federal prisoner who seeks compassionate release. He was a mid-level dealer of drugs and stands convicted of possession with intent to distribute cocaine and heroin within 1000 feet of a school and possession of a firearm in furtherance of a drug crime. [DE 36 at 1.] On September 5, 2019, I sentenced Rodriguez to a term of 84 months' imprisonment. [DE 33; DE 16.] Rodriguez is currently housed in the Federal Correctional Institution in Ashland, Kentucky, with a projected release date of November 20, 2024.

In July 2020, Rodriguez filed his first compassionate release request, claiming that he should be released from prison because his wife's health condition prevented her from caring for their children. [DE 40.] I denied that motion, because although the conditions were undoubtedly challenging for Rodriguez and his family, they were not "extraordinary and compelling." [DE 45.] Now before me is Rodriguez's second motion under 18 U.S.C. § 3582(c)(1)(A) for a compassionate release from prison. [DE 51.] He seeks compassionate release because changed family circumstances require his

assistance in raising his young children, he is vulnerable to contracting COVID-19, and he does not pose a danger to the public. *Id.* The government has filed a response opposing the motion [DE 53], and Rodriguez has filed a reply [DE 57].

As amended by the First Step Act, § 3582(c)(1)(A) authorizes a defendant to seek a modification of an imposed term of imprisonment upon a showing that "extraordinary and compelling reasons warrant such a reduction." However, before filing a motion under this provision, Rodriguez is required to "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on [his] behalf." 18 U.S.C. § 3582(c)(1)(A). The government concedes that Rodriguez has satisfied the exhaustion requirement [DE 53 at 6–7], so I can set that issue aside.

As with Rodriguez's initial request for modification of his sentence, the real issue is whether there are "extraordinary and compelling reasons" that warrant a reduction of the sentence I previously imposed. Rodriguez presents two reasons in support of his request for compassionate release. Neither is "extraordinary and compelling."

First, Rodriguez requests compassionate release due to changed family circumstances. The Sentencing Guidelines provide that two types of family circumstances may constitute extraordinary and compelling reasons for release: (1) the death or incapacitation of the caregiver of the defendant's minor child or children; or (2) the incapacitation of the defendant's spouse or partner when the defendant would be their only caregiver. U.S.S.G. § 1B1.13 cmt. n.1. Rodriguez cites the loss of critical child care for his young children, including his son who has special needs. [DE 51 at 3.]

To enable his wife to work full-time, Rodriguez's step-daughter had assisted in caring for his son. Rodriguez claims that this arrangement has proven untenable because it prevents his step-daughter from pursuing educational and vocational opportunities. The only other person who is willing to assist in caring for his minor children is of advanced age, and she has found caring for his son "overwhelm[ing]" in light of his physical development and health conditions. *See id.*

This situation is troubling, and I am sympathetic to the difficulties Mr. Rodriguez and his family are facing. The fact that Rodriguez is the father of multiple minor children, including a child with special needs, is one reason I sentenced him to a term of imprisonment below the Guidelines recommended range. But for present purposes, Rodriguez bears the burden to demonstrate "extraordinary and compelling" reasons justifying his immediate release from prison. This situation, while no doubt incredibly challenging for Rodriguez and his family, does not meet that high bar.

Rodriguez notes that our sister court in Southern Indiana recently granted compassionate release in two analogous cases, citing *United States v. Barnes*, No. 3:17-cr-00011-RLY-MPB-04, 2021 WL 1269783 (S.D. Ind. Jan. 29, 2021) and *United States v. Murray*, No. 1:15-cr-00153-SEB-TAB-05, 2021 WL 795451 (S.D. Ind. Mar. 2, 2021). In *Barnes*, the defendant left her twenty-year-old physically disabled son in the care of his grandmother. *Id.* at *1, *4. After the grandmother developed dementia and was unable to continue providing the 24-hour care the defendant's son required, no other family members were able to step in. *Id.* at *1, *4. The defendant had "less than 8 months" left

3

on a 70 month sentence at the time of her request. *Id.* at \*1. The court exercised its discretion to find the circumstances extraordinary and compelling. *Id.* at \*4. In *Murray*, the defendant obtained compassionate release based on the need to provide care for his eleven-year-old son, who had been "bouncing back and forth between his two grandmothers' homes," and who suffered abuse and developed severe behavioral problems following the defendant's incarceration. *Id.* at \*1–\*2, \*4. In granting the defendant's request, the court specifically noted that the defendant stood to "lose his parental rights if he is not released," because his incarceration prevented him from participating in court-mandated services in connection with a "Child in Need of Services" proceeding before the Indiana Department of Child Services. *Id.* The defendant had served the vast majority of his 100-month sentence (over 66 months) for drug-related charges at the time of his request. *Id.*

This is a much different case. Rodriguez's partner, who is the primary caregiver for their minor children, has not passed away. [*Id.*; *see* U.S.S.G. § 1B1.13 cmt. n.1.] I already determined that she is not incapacitated as a result of her medical conditions [*see* DE 45]; and in re-briefing the issues, Rodriguez acknowledges that she is able to work, undermining a finding that she is incapacitated [DE 51 at 3]. Moreover, unlike in *Barnes*, in which the defendant was going to be released from prison in under 8 months, Rodriguez's anticipated release date is still over two years away. Finally, Rodriguez acknowledges that his son's maternal grandmother is "willing to provide" care for his son. [DE 61 at 2.] While she is of advanced age and must make a "pain staking effort" to

4

care for his minor children, she is willing to assist their mother in caring for them. *Id.* In sum, because Rodriguez's children have a primary caregiver who is not incapacitated and has support, I conclude that the changed family circumstances are not an "extraordinary and compelling reason" for a modification of his sentence.

Second, Rodriguez seeks compassionate release because he is uniquely vulnerable to COVID-19. In support of this argument, Rodriguez asserts that he is at high risk of COVID-19 due to obesity and chronic bronchitis. [DE 51 at 5.] In response, the government notes that Rodriguez has been fully vaccinated against COVID-19 and received a booster shot. [DE 53 at 9; DE 55.] In his reply, Rodriguez questions the efficacy of "an experimental vaccine," reiterates that he suffers from conditions that qualify as co-morbidities for COVID-19 infection, and notes that two of his workmates were recently infected and quarantined despite being fully vaccinated. [DE 61 at 3.]

For most prisoners, "the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release." *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021); *see, e.g.*, *United States v. Ugbah*, 4 F.4th 595 (7th Cir. 2021). Under *Broadfield* and *Ugbah*, the availability of a vaccine means that even in prison, COVID-19 rarely presents "a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *See* U.S.S.G. § 1B1.13. At bottom, the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone

cannot independently justify companionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020).

However, I am aware of the Seventh Circuit's caution to consider the individualized arguments and evidence of each defendant who petitions for compassionate release. *United States v. Rucker*, 27 F.4th 560, 563 (7th Cir. 2022). A defendant's early release from imprisonment may be warranted where the defendant is "unable to receive or benefit from a vaccine" or "remain[s] vulnerable to severe infection, notwithstanding the vaccine," *id.*, or where the defendant proffers "individualized facts based on concerns like Omicron breakthrough cases, long COVID, or the relative inefficacy of vaccines for certain vulnerable prison populations, like the immunocompromised," *United States v. Newton*, 37 F.4th 1207, 1207 (7th Cir. June 15, 2022) (citing *Rucker*, 27 F.4th at 563).

In this case, I am not persuaded that Rodriguez has shown that his medical conditions place him in "the small minority of federal prisoners" within what the Court of Appeals has referred to as the *Broadfield-Ugbah* exception. *See Rucker*, 27 F.4th at 563. Rodriguez's arguments run headlong into this Circuit's firm precedent, which establishes that the availability of a vaccine "makes it impossible to conclude" that the risk of COVID-19 infection is an extraordinary and compelling reason warranting compassionate release. *Broadfield*, 5 F.4th at 803; *United States v. Kurzynowski*, 17 F.4th 756, 760–61 (7th Cir. 2022) ("Vaccinated prisoners in 2021 do not face the same risks of

serious illness as they did in 2020. . . . Because Kurzynowski is vaccinated, he is ineligible for relief[.]"). While there are exceptions to the rule, "impossible" is a daunting standard. *See, e.g.*, *United States v. Barbee*, 25 F.4th 531, 533 (7th Cir. 2022) (upholding denial of compassionate release motion where prisoner cited Type II diabetes, hypertension, and obesity risk factors, finding the request was foreclosed by availability of effective vaccine); *United States v. Adkins*, 854 F. App'x 758, 759–60 (7th Cir. 2021) (affirming denial of compassionate release motion where defendant failed to "sufficiently address his concerns about his susceptibility to COVID-19" after being fully vaccinated).

     Rodriguez does not demonstrate that his health risk factors are conditions that themselves constitute extraordinary and compelling conditions warranting an immediate release from prison. He acknowledges that he has received treatment for asthma and chronic bronchitis and does not suggest that these conditions are out of hand or have been inadequately addressed by BOP. Couple this with the fact that Rodriguez has been fully vaccinated against COVID-19. Rodriguez argues that outside of prison he "would be better able to protect himself," because he would get "away from the communal living environment in the prison camp dormitories that house inmates in close proximity to each other" in conflict with BOP "social distancing policies." [*See* DE 51 at 5.] But because he has already been vaccinated, Rodriguez's continued incarceration is unlikely to present any heightened risk of infection, as compared to protections he would enjoy outside of the prison system. Moreover, while

7

Rodriguez cites anecdotal evidence of prisoners at Ashland FCI becoming infected with COVID-19 despite being fully vaccinated [*see* DE 61 at 3], the online report of Bureau of Prison COVID statistics (https://www.bop.gov/coronavirus/) reflects that at Ashland FCI there is currently 1 positive inmate, and no staff members have tested positive. In sum, Rodriguez does not demonstrate that his institutional setting presently poses a significant risk of infection warranting a finding that his health situation is "extraordinary and compelling."

Because Rodriguez does not present an extraordinary and compelling reason for a sentencing reduction, I do not take the "unnecessary step two" of weighing the sentencing factors identified in 18 U.S.C. § 3553(a). *Newton*, 37 F.4th at 1207 (citing *United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) (applicable sentencing factors in § 3553(a) need to be considered only if the sentencing judge finds an extraordinary and compelling reason for relief)).

## Conclusion

I am deeply sympathetic to the challenges facing Mr. Rodriguez and his family as a result of his incarceration and changed circumstances. And I am cognizant of the hardship and suffering imposed on millions of people across the world as a result of the COVID-19 pandemic. However, the special authority granted to sentencing judges by the recent amendment to § 3582(c)(1)(A) is narrow, and understandably so, because it comes at the cost of truncating the carefully measured term of imprisonment previously imposed, at the expense of all sentencing factors and goals weighed in determining that

sentence. I decline to exercise this special authority under the circumstances presented.

**ACCORDINGLY:**

Defendant Carlos Rodriguez's Emergency Request for Compassionate Release Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) [DE 51] is **DENIED**.

**SO ORDERED.**

ENTERED: July 14, 2022.

                                   /s/ Philip P. Simon
                                   PHILIP P. SIMON, JUDGE
                                   UNITED STATES DISTRICT COURT